UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


RONALD D. MELL, SR., et al.,    :    NO: 1:08-CV-00715
                                :
          Plaintiffs,           :
                                :    **OPINION AND ORDER**
              v.                :
                                :
ANTHEM, INC., et al.,           :
                                :
          Defendants.           :


This matter is before the Court on Plaintiffs' Motion for

Class Certification (doc. 28), the City Defendants' Response in

Opposition (doc. 39), the Wellpoint Defendants' Response in

Opposition (doc. 40), and Plaintiffs' Reply (doc. 44). The Court

held a hearing on Plaintiffs' Motion on October 14, 2009. For the

reasons indicated herein, the Court GRANTS Plaintiffs' motion and

conditionally certifies the proposed class.

## I. Background

The following facts have been derived from the various

pleadings, motions, and discovery created during the course of this

litigation. This case involves Plaintiffs' allegations that they

were cheated out of proceeds as insureds, when Defendant Anthem

Insurance ("Anthem") demutualized in 2001 and issued 870,021 shares

of stock to the City of Cincinnati ("the City"), their employer,

instead of to Plaintiff policy holders (doc. 1). The City

ultimately sold the stock for approximately $55 million, the amount

Plaintiffs seek to recover in this action (Id.). Plaintiffs allege

they are a class of 2,460 individuals named as insured persons, or who were members of a group of insured persons covered under the Group Policy during the relevant time period (Id.). In addition to Anthem and the City, Plaintiffs name as Defendants the individual City council members in their individual and official capacities, Anthem Inc. (n/k/a "Wellpoint Inc."), the parent corporation company of both Defendant Anthem Insurance and its subsidiary, Defendant Community Insurance Company ("CIC"). Plaintiffs assert seventeen state common law claims in diversity for breaches of multiple contracts, conversion, and misappropriation, aiding and abetting conversion and misappropriation, breach of fiduciary duties, breach of agency agreement and fraudulent concealment, and seek compensatory and punitive damages and other relief (Id.).

## II.  Plaintiffs' Motion

### A.  Proposed Class Definition

Plaintiffs currently seek certification of their class under Fed. R. Civ. P. 23 (doc. 28). At the hearing, Plaintiffs' counsel simplified the proposed definition and explained that it basically encompasses employees and retirees of the City who were named insureds or members of groups named as insureds, insured continuously from June 18, 2001 to November 2, 2001. The class includes two subsets, 1) those who had insurance prior to the merger between Community Mutual Insurance Company and Anthem in

1995, and 2) those who received insurance post-merger. In their motion, Plaintiffs offer a less simple, but comprehensive definition:

Plaintiffs allege they are individual active and retired employees of the City, or their surviving spouses, who were named as insured persons (or who were members of the group of persons named as insureds) continuously from June 18, 2001 through November 2, 2001, inclusive, under a fully-insured Group Policy issued by either:

(A) Community Mutual Insurance Company ("CMIC") and in force immediately prior to CMIC's merger with Anthem Insurance Companies (Anthem Insurance)(effective October 1, 1995), which coverage then continued in effect post-merger through November 2, 2001, inclusive, under a Group Guaranty Policy issued by Anthem Insurance/Community Insurance Company ("CIC") and specifically without limitation:

(i) the City retirees who were covered for medical benefits by the fully-insured Retirement HMP, identified by GID number HI7955-010, at any time from January 1, 1990 through June 30, 2000, inclusive, and whose coverage continued uninterrupted thereafter at least through November 2, 2001, and

(ii) the members of the City Fire Department who were covered for dental benefits by the fully-insured Dental Plan for firefighters, identified by GID number H25993-017, at any time from January 1, 1990 through June 30, 2000, inclusive, and whose coverage continued uninterrupted thereafter at least through November 2, 2001; or

(B) Anthem Insurance/CIC as part of a new full-insurance group coverage begun at any time from October 1, 1995 through June 30, 2000, inclusive, which continued in effect through November 2, 2001, inclusive, and specifically including without limitation:

(i) the City employees enrolled in the firefighter's Community Preferred Health Plan ("CPHP"), identified by GID number H25993-008, who were covered by the fully-insured Human Organ Transplant (HOT) rider at any time from January 1, 1998 through June 30, 2000, inclusive, and whose coverage continued uninterrupted thereafter at least through November 2, 2001,

3

(ii) the City employees enrolled in the Management CPHP, identified by GID number H25993-013, who were covered by the fully-insured HOT rider at any time from January 1, 1998, through June 30, 2000, inclusive, and whose coverage continued uninterrupted thereafter at least through November 2, 2001, and

(iii) the City employees enrolled in the AFSCME CPHP, identified by GID number H25993-018, who were covered by the fully-insured HOT rider at any time from January 1, 1998 through June 30, 2000, inclusive, and whose coverage continued uninterrupted thereafter at least through November 2, 2001,

but excluding therefrom:

(i) Defendants, and each of them, and their respective successors and assigns;

(ii) the elected officials of the City holding office at any time during the period from June 18, 2001 through November 2, 2001, inclusive, and thereafter, and their respective parents, spouses, and children;

(iii) the executive officers and directors of Anthem, Inc., Anthem Insurance and CIC, together with their predecessors and successors, and their respective parents, spouses, and children; and

(iv) counsel of record in this action and their respective parents, spouses and children; and

(v) any judicial officer who enters an order in this action, and their respective parents, spouses, and children.

(doc. 28).

Plaintiffs further seek to designate Plaintiffs Robert Espel, James Matacia and Claudette Shank (on behalf of the estate of Frieda Wilmes) to serve as class representatives, and their current counsel as class counsel (Id.). At the hearing, counsel indicated that Ronald Mell, Sr., no longer seeks to serve as class

representative, due to health reasons.

The district court has broad discretion in deciding whether to certify a class. <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 100 (1981). A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met. <u>General Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 161 (1982). Maintainability as a class action may be determined by the pleadings, although it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met. <u>Id</u>. at 160.

The party seeking to utilize the class action device bears the burden of proof. <u>Senter v. General Motors Corp.</u>, 532 F.2d 511, 522 (6th Cir. 1976). In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591 (1997). Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b). <u>Id.</u> In the case at hand, Plaintiffs claim that they have met the requirements under the subcategory of Rule 23(b)(1) or alternatively under Rule 23(b)(3).

**I. Requirements of Federal Rule of Civil Procedure 23(a)**

In order to proceed as a class action, the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are

> questions of law or fact common to the class,
> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As no class action may be maintained without meeting these prerequisites, an analysis of these factors is appropriate.

### A. Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient. Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1991); see also Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 63 (S.D. Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required."). There is no strict numerical test used to determine whether joinder is impracticable. Senter, 532 F.2d at 523. Instead, the court must examine the specific facts of each case. General Tel. Co. of Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). In determining numerosity, the court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." Senter, 532 F.2d at 523.

This court, in <u>Basile v. Merrill Lynch, Pierce, Fenner & Smith,</u> <u>Inc.</u>, 105 F.R.D. 506 (S.D. Ohio 1985) found that as few as twenty-three class members could satisfy the requisite numerosity. <u>Id</u>. at 508 ("Paraphrasing another district court's view of the first requirement of the rule, while 23 may not be a large number when compared to other classes that have been certified, it is a large number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.")(<u>citing</u> <u>Philadelphia Electric Co. v. Anaconda American</u> <u>Brass Co.</u>, 43 F.R.D. 452 (E.D.Pa. 1968)).

Based on the fact that the proposed class has approximately 2,460 members, Plaintiffs argue they have established numerosity. Defendants do not challenge Plaintiffs on the question of numerosity, and the Court finds no question that 2,460 members meet the requirement.

**B.    Rule 23(a)(2): Commonality**

In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." <u>Day</u>, 144 F.R.D. at 333 (quoting <u>Sweet v. General Tire</u> <u>& Rubber Co.</u>, 74 F.R.D. 333, 335 (N.D. Ohio 1976)) (emphasis in original). The commonality test is qualitative, not quantitative.

7

1 Herbert B. Newberg and Alba Conte, <u>Newberg on Class Actions</u>, §
3.10 at 3-50 (3d ed. 1992). There need be only a single question
of law or fact common to all members of the class. <u>Id.</u> "[T]he
mere fact that questions peculiar to each individual member of the
class remain after the common questions of the defendant's
liability have been resolved does not dictate the conclusion that
a class action is impermissible." <u>Sterling v. Velsicol Chemical
Corp.</u>, 855 F.2d 1188, 1197 (6th Cir. 1988).

Plaintiffs argue that there are multiple questions of law
or fact common to the class in satisfaction of Rule 23(a)(2) (doc.
28). Here, Plaintiffs contend each class member was subject to the
same deprivation of owed compensation due to the Defendants'
breaches of contract and fiduciary duties arising from the same
demutualization transaction (<u>Id.</u>). Among specific common
questions, Plaintiffs query:

(a) whether and to what extent the City was entitled to
demutualization compensation;

(b) whether and to what extent the class members were entitled
to demutulization compensation;

(c) whether class members were insured at the time of the
demutualization under a new group health insurance policy
issued to the City by CIC after the 1995 merger;

(d) whether class members were insured at the time of the
demutualization under a group health insurance policy issued
to the City by CMIC before the 1995 merger;

(e) whether Anthem Insurance was obligated to distribute
demutulization directly to class members instead of to the
City,

(f) whether the City was obligated to distribute the Anthem shares it received to and among the class members;

(g) whether class members are "persons named as insureds" and fit within the definition of the term "policyholder" in Ohio Rev. Code § 3913.20(B);

(h) whether class members as "policyholders" are entitled to stock compensation under Ohio Rev. Code § 3913.22(A); and

(i) whether and to what extent the City's 870,021-shares allocation included credits for contributions to Anthem Insurance's surplus attributable to class members and others that are not class members.

(Id.).

At the hearing, Plaintiffs' counsel simplified the question even further, contending the same issue is "common to everybody," that "the City shouldn't have gotten a dime." Counsel for Wellpoint responded that such common issue is overwhelmed by individualized issues, particularly the statute of limitations defense. In Wellpoint's view, the demutualization occurred in 2001, and all of Plaintiffs' tort claims are time-barred unless any of the individual Plaintiffs can say they did not discover facts giving them reasonable notice of a claim between 2001 and 2004. Wellpoint argues that during such time period there is a lot of evidence that the Plaintiffs reasonably should have known of any potential claim because of the hearings, mailings, filings, and press coverage associated with the demutualization. Similarly, Wellpoint argued that reliance is an element of Plaintiffs' fraud claim, and Plaintiffs must prove individual reliance. Finally, Wellpoint raised the issue of different "pathways of proof" between

the pre-merger and post-merger subclasses.

The City similarly argued in its Response (doc. 39), and at the hearing, that the exception to the City's immunity under Ohio Rev. Code § 2744.09(B) only applies to City employees, such that named Plaintiff Claudette Schenck, the executrix of her mother's estate, is subject to a unique defense. The City further argued that because Plaintiffs Espel and Matacia never paid a premium, and because the City paid it for them, they lack commonality with class members that paid a premium (doc. 39).

The Court reiterates its opinion expressed at the hearing that although Defendants may have meritorious defenses, such defenses can be considered in dispositive motions at a later juncture. Such defenses could very well result in subclasses or the dismissal of certain Plaintiffs. In the Court's view, it is a simple procedural question at this point in time whether Plaintiffs have proffered a common issue of law or fact such that the commonality prerequisite is met. Clearly Plaintiffs have proffered the common question regarding whether the proceeds of the demutualization should have gone to class members instead of the City. Regardless of differing "pathways of proof" the current subclasses both allege the common issue that they should have received the money that went to the City, and they did not. Moreover, the Court does not find the City's argument well-taken concerning Schenck, because clearly, under Ohio law, an executrix

of an estate stands in the shoes of the decedent for any of decedent's legal claims. <u>Peters v. Columbus Steel Castings Co.</u>, No. 05AP-308, 2006 Ohio App. LEXIS 327, *P17 (Ct. App. Ohio, January 31, 2006)(<u>quoting</u> <u>Briarcliff Nursing Home, Inc. v. Turcotte,</u> 894 So. 2d 661, 665 (Ala. 2004)). The decedent in this instance was the widow of a City employee who allegedly had insurance coverage for the decedent. Her claims are therefore common to those of other proposed class members: the City reaped a benefit to which the decedent, and now her estate, are allegedly entitled.

The City's questions regarding Espel and Matacia may indeed have merit, but are more properly addressed in a dispositive motion. It appears from Plaintiffs' briefing that the Indiana Insurance Commissioner rejected the argument that employers that contributed a substantial portion of premiums for a group policy are entitled to receive the proceeds of a demutualization of such policy (doc. 44). In any event, Espel and Matacia proffer the common allegation that they were denied proceeds to which they were entitled. Under these circumstances, the Court finds well-taken Plaintiffs' position that they meet the commonality requirement. <u>Sterling</u>, 855 F.2d 1188, 1197.

### C.   Rule 23(a)(3): Typicality

Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses

of the class." Fed. R. Civ. P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. <u>Senter</u>, 532 F.2d at 525 n.31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. 1 Newberg, <u>supra</u>, § 3.13, at 3-75. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Id. at 3-76.

This analysis is necessarily intertwined with the analysis of commonality. Here, proposed class representatives Schenck, Espel, and Matacia allege the City spent the demutualization proceeds that should have gone to each of them, as well as to all other members of the proposed class (doc. 28). Plaintiffs assert the same causes of action on their own behalf as they seek to assert on behalf of the proposed class (<u>Id</u>.). They further contend that the proofs required to prevail on their claims are the same as those necessary for other class members to prevail (<u>Id</u>.). Accordingly, they conclude they meet the typicality requirement (<u>Id</u>.).

The City attacks the typicality of Plaintiff Schenck's claims based on the fact that she is an executrix. The Court's

analysis as to commonality, above, is equally applicable here. The Court finds no genuine question that Schenck's interests are aligned with the other proposed class members' interests. The City argues in the same vein that Espel and Matacia are atypical because as firefighters they paid no premium, but rather the City did on their behalf. The Court does not see how the City's argument shows Espel and Matacia's interests are not aligned with the class. Espel and Matacia still allege they were entitled to demutualization proceeds, and such claim is typical of all proposed class members. The threshold for satisfying the typicality prong is a low one. <u>Weisfeld v. Sun Chem. Corp.</u>, 210 F.R.D. 136, 140 (D.N.J. 2002)(<u>quoting</u> <u>In re Catfish Antitrust Litig.</u>, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993) "[i]n instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent members.") For these reasons, the Court concludes Plaintiffs have met the typicality prerequisite of Rule 23(a)(3). This leads to the final prerequisite of class certification, adequacy.

**D.    Rule 23(a)(4): Adequacy**

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). There are two criteria for determining the adequacy of representation: "1) the representative must have common

interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." <u>Senter</u>, 532 F.2d at 525; <u>Cross v. Nat'l Trust Life Ins. Co.</u>, 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). This adequacy requirement overlaps with the typicality requirement.

The proposed class representatives argue they are adequate class representatives for the class as they have a sufficient stake in the outcome of the claims to ensure zealous advocacy on behalf of the absent class members, with whom their interests are aligned (doc. 28). They aver that their interests are not antagonistic to the class, nor are there any conflicts of interest (<u>Id</u>.). Plaintiffs further aver that their counsel, Eric Zagrans, Dennis Barron, Michael Becker, and Alphonse Gerhardstein, are experienced in class action litigation and will fairly and adequately protect the class as class counsel (<u>Id</u>.).

At the hearing, Defendants argued that because the value of the demutualized stock is a fixed number, the class members have an inherent conflict against one another, because the "pie" of proceeds per member gets sliced smaller for each class member added to the class. In Wellpoint's view, the Complaint defines two

mutually exclusive groups with competing claims (doc. 40).
Defendants argue any increase in the recovery for one group
decreases the potential recovery for those in the other group (<u>Id</u>.).
Defendants also argue that class counsel have a conflict of
interest, as they concurrently represent a class in <u>Ormond v.</u>
<u>Anthem</u>, which is pending in the Southern District of Indiana (<u>Id</u>.).
In Defendants' view, class counsel are improperly representing two
sets of Plaintiffs with competing interests to the same assets
(<u>Id</u>.).

Plaintiffs reply that the <u>Ormond</u> matter is completely
different, as it involves the claims of insureds who actually did
receive compensation in demutualization, but contend they were paid
too little (doc. 44). Plaintiffs argue that because Anthem
distributed more stock to the City than that to which the proposed
class was entitled, it could very well be that the <u>Ormond</u> class
could be entitled to the excess over and above what the class
members in this case should properly receive (<u>Id</u>.). At the hearing
counsel further argued the Court need not reach such issue until it
is determined whether the class members in this matter are entitled
to recovery (<u>Id</u>.). If so, argued counsel, the parties could set up
management tools to ensure all defenses are adequately addressed and
that all pathways to individual recovery are adequately addressed
(<u>Id</u>.).

Having reviewed this matter, the Court finds that

15

Plaintiffs Schenck, Espel, and Matacia clearly have common interests with unnamed members of the class, as they all share a common complaint resulting from the same course of conduct. The Court rejects Wellpoint's "pie" argument. Such an argument would make all actions with limited funds uncertifiable, a result clearly contrary to Rule 23(b)(1)(B) and the principles articulated in <u>Ortiz v. Fibreboard Corp.</u>, 119 S. Ct. 2295, 2311 (1999). The Court similarly rejects Wellpoint's attack on the adequacy of Plaintiffs' counsel, premised on the theory they have a conflict of interest with the clients they are serving in the <u>Ormond</u> matter. The Court is convinced that the interests of the parties in <u>Ormond</u> and in the case at bar are not in conflict. In any event, the Court takes Plaintiffs' assertion in good faith that excess funds paid to the City, over and above those to which the insureds in this case have legitimate claims, could very well be subject to claims of the <u>Ormond</u> plaintiffs. Such issue does not defeat the adequacy of Plaintiffs' counsel.

The Court further notes that Defendants attacked the ability of the proposed individual representatives to adequately represent the class, in part by taking portions of deposition testimony out of context. The Court accepts Plaintiffs' position that Schenck, Espel, and Matacia have sufficient knowledge about this litigation to satisfy the adequacy requirements of Rule 23(a)(4).

Therefore, the Court concludes that the prerequisites to Rule 23 have been met in this case. This does not end the Court's analysis, however. Once it is determined that the prerequisites to Rule 23 have been met, the Court must determine if the case is of a type which can be certified under Rule 23(b). Plaintiffs contend their class can be certified under either Rule 23(b)(1)(A) or Rule 23(b)(3).

## II. The Requirements of Federal Rule of Civil Procedure 23(b).

### A. Rule 23(b)(1)(A) and (B).

District courts may certify a class under Rule 23(b)(1)(A) if 1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." Amchem Prods., Inc. v Windsor, 521 U.S. 591, 614 (1997)(internal quotation omitted). Class certification under Rule 23(b)(1)(A) is proper when judgments entered in separate lawsuits would force a party to comply with one court order yet violate another court order. Hallaba v. Worldcom

<u>Network Servs</u>., 196 F.R.D. 630, 644 (N.D. Okla. 2000).

Plaintiffs argue that the City employees could have filed over 2000 individual lawsuits, and that varying decisions could result in inconsistent adjudications as to similarly-situated City employees (doc. 28). To prevent inconsistent adjudications, Plaintiffs contend the Court should certify the proposed Class under Rule 12(b)(1)(A) (<u>Id</u>. <u>citing</u> <u>Cates v. Cooper Tire and Rubber Co.</u>, 253 F.R.D. 422, 431 (N.D. Ohio 2008)). Defendants argue Plaintiffs must do more than show that some in the class could be successful in pursuing their claims while others might not be (doc. 40, <u>citing</u> <u>Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.</u>, 158 F.R.D. 681, 687 (D. Kan. 1994)). Defendants contend Plaintiffs must show that varying results could lead to incompatible standards of conduct for Defendants, such that Defendants would not know if it were legally permissible to pursue a particular conduct (<u>Id</u>.). In the Court's view, varying results in individual actions could lead to incompatible standards as to whether Defendants could know whether it is permissible retain the proceeds of the demutualization. Class certification is therefore warranted under Rule 23(b)(1)(A).

Rule 23(b)(1)(B) allows for certification where the prosecution of separate actions would create the risk of adjudications that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudication or would substantially impair or impede their ability

18

to protect their interests.    Fed. R. Civ. P. 23(b)(1)(B).    A classic example of a 23(b)(1)(B) suit is one involving "the presence of property which called for distribution or management." J. Moore & J. Friedman, 2 Federal Practice 2249 (1938).

Notwithstanding Defendants' arguments to the contrary, the Court finds well-taken Plaintiffs' position that this matter involves a "limited fund," that is, a limited number of Anthem shares that Plaintiffs allege should have been allocated to the class (doc. 44).    Plaintiffs correctly signal the Advisory Committee notes state that Rule 23(b)(1)(B) is appropriate when the remedy for a large class of security holders for a fiduciary breach "requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23(b)(1)(B), Advisory Committee Note (1966 Amendment).    This case falls squarely within the meaning articulated by the Advisory Committee.    The Court therefore also finds certification under 23(b)(1)(B) appropriate.

**B.  Rule 23(b)(3).**

Having thus found certification of Plaintiffs' class appropriate under both subsections of Rule 23(b)(1), the Court need not reach the question of whether the class qualifies under Plaintiffs' alternatively pleaded theory that they qualify under Rule 23(b)(3).  However, out of an abundance of caution, the Court finds it appropriate to do so.

Subsection (b)(3) applies if 1) common questions

19

"predominate over any questions affecting only individual members,"
and 2) the class action is "superior to other available methods for
the fair and efficient adjudication of the controversy." Fed. R.
Civ. P. 23(b)(3). The matters pertinent to the finding class
treatment superior include: (A) the interest of members of the class
in individually controlling the prosecution or defense of separate
actions; (B) the extent and nature of any litigation concerning the
controversy already commenced by or against members of the class;
(C) the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; (D) the
difficulties likely to be encountered in the management of a class
action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs contend the common question of whether class
members were entitled to demutualization compensation predominates
over any questions affecting individual members (doc. 28).
Plaintiffs further contend that even Defendants' defenses show
common questions (Id.). As for the issue of superiority, Plaintiffs
contend the fact this case involves a common nucleus of operative
fact arising from a common transaction strongly suggests that
economies of time, effort, and expense will be achieved by
certification of a class action (Id.). The potential of 2,000
individual lawsuits, Plaintiffs argue, is one that would create
duplication and massive waste of effort (Id.).

As for the factors considered determining the superiority

of class treatment, Plaintiffs argue first, in a seeming contradiction to the threat of 2,000 lawsuits, that it would be cost-prohibitive for any individual to prosecute these claims in an individual action (_Id_.). As for the second factor, Plaintiffs state there is currently no other action in any state or federal forum by any member of the proposed class (_Id_.). Next, Plaintiffs argue judicial economy would be achieved by concentrating all the class members' claims in this single forum (_Id_.). Finally, Plaintiffs contend they do not envision any significant difficulties with managing this class action (_Id_.). Defendants argue in response that individualized questions relating to the discovery rule would overwhelm any common litigation of claims, that individualized reliance issues would predominate in a common trial of the fraud claims, and Plaintiffs cannot show that a class action is superior to individual actions (doc. 40).

Having reviewed this matter, the Court finds Plaintiffs' position well-taken that class certification is appropriate under Rule 23(b)(3). In the Court's view, the common question of whether the class members were entitled to the demutualization proceeds predominates over all of the issues raised by Defendants. The Court sees no economy in allowing some potential 2,000 separate actions to proceed when the resolution of the core question as to a certified class will likely end this matter. The Court finds well-taken Plaintiffs' argument that class certification is superior to

any other method of resolving the matter as it will promote economy, expediency, and efficiency. The Court agrees that Defendants have raised some potential individual issues, but no such issue predominates over the common one.

The Court further notes, as Plaintiffs signal in their briefing, that where an action falls under both Rule 23(b)(1) and (b)(3), Rule 23(b)(1) should control when both provisions apply (doc. 44, <u>citing</u> WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1772 at 8). Although the Court conditionally certifies the class pursuant to both provisions, due to the differing notice requirements applicable to such provisions in Rule 23(c)(A) and (B), Rule 23(b)(1) controls.

## III. Conclusion

Having heard the positions of the parties at the October 14, 2009 hearing, and having considered their respective arguments expressed in their briefing, the Court finds that this matter should be conditionally certified as a class action. Plaintiffs have met the requirements for class certification under Federal Rules of Civil Procedure 23(a), (b)(1), and alternatively, section(b)(3).

In the Court's view, having conditionally certified this litigation as a class action, should the legal question in the pending dispositive motions of who is entitled to the proceeds of the demutualization ultimately be decided in Defendants' favor, such decision would likely dispose of all of the class members' claims

in one fell swoop. Should such question be decided in Plaintiffs'
favor, further proceedings will be in order to determine the rights
of the various class members. In such case, the benefits of Rule
23 may be available in tailoring subclasses based on Defendants'
defenses. Finally, the Court emphasizes that its granting of
conditional certification should in no way be taken as a decision
on the merits of the question of who is entitled to the
demutualization proceeds.

Accordingly, the Court hereby GRANTS Plaintiffs' Motion
for Class Certification (doc. 28), conditionally CERTIFIES this case
as a class action pursuant to Fed. R. Civ. P. Rules 23(a), (b)(1)
and (b)(3), and DEFINES the class according to Plaintiffs'
definition as stated in Section II. A. herein. The Court further
DESIGNATES Plaintiffs Claudette Schenck, Robert Espel, and James
Matacia to serve as class representatives, and DESIGNATES Attorneys
Dennis Barron, Michael Becker, Alphonse Gerhardstein, and Eric
Zagrans to serve as class counsel.


SO ORDERED.


Dated: November 4, 2009      /s/ S. Arthur Spiegel

                             S. Arthur Spiegel
                             United States Senior District Judge